Jeffrey S. Weinstein, Esq. (JW-2619)
MOUND COTTON WOLLAN & GREENGRASS
60 Park Place
Newark, New Jersey 07102
(973) 494-0600
jweinstein@moundcotton.com

**Attorneys for Defendants Except
Lloyd's Syndicate 1200**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| FORMOSA PLASTICS CORPORATION, U.S.A., | Docket No.: 2:06 CV 05055 (HAA)(ES) |
|              Plaintiff, | |
|    vs. | |
| ACE AMERICAN INSURANCE COMPANY; ZURICH AMERICAN INSURANCE COMPANY; NEW HAMPSHIRE INSURANCE COMPANY; COMMONWEALTH INSURANCE COMPANY; ARCH SPECIALTY INSURANCE COMPANY; EVEREST REINSURANCE (BERMUDA) LTD.; ALLIED WORLD ASSURANCE COMPANY, LTD.; LLOYD'S SYNDICATE 1414 (UK); LLOYD'S SYNDICATE 1200 (AA-1127200) (UK); LLOYD'S SYNDICATE 33 (UK); LLOYD'S SYNDICATE 1221 (UK); LLOYD'S SYNDICATE 282 (UK); LLOYD'S SYNDICATE 2003 (UK); and CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, | |
|              Defendants. | |

## DEFENDANTS' MEMORANDUM OF LAW
### IN SUPPORT OF THEIR MOTION TO DISMISS

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................iii

PRELIMINARY STATEMENT............................................................ 1

FACTS ................................................................................................ 2

    I.     INTRODUCTION .................................................................. 2

    II.    CAUSE AND ORIGIN INVESTIGATION/REQUEST FOR PROOF AND EUO ................................................................ 3

    III.   PRIOR PAYMENTS BY UNDERWRITERS.................................. 8

    IV.   THE DISPUTE OVER PROPER VALUATION OF FORMOSA'S LOSS ................................................................ 9

    V.    FORMOSA COMMENCES LITIGATION ................................... 11

    VI.   FORMOSA'S OCTOBER 25, 2006 "PROOF" ......................... 14

ARGUMENT ...................................................................................... 17

    I.     THIS ACTION IS PREMATURE AND SHOULD BE DISMISSED UNDER FED. R. CIV. P. RULE 12(b)(6)................ 17

    II.    THE LAWSUIT SHOULD BE DISMISSED BECAUSE FORMOSA HAS FAILED TO SUBMIT A SUFFICIENT PROOF OF LOSS ...................................................................... 20

         A.    Submission Of a Proper Proof is a Prerequisite to Recovery................................................................ 20

         B.    The Purported Proof Submitted By Formosa Is Inadequate, Warranting Dismissal of This Action................ 22

    III.   FORMOSA'S REFUSAL TO SUBMIT TO AN EUO INDEPENDENTLY WARRANTS DISMISSAL ........................... 26

         A.    An Examination Under Oath Is An Insurer's Absolute Right Granted By The Policy................................ 26

B.   Formosa Has Failed To Submit To Underwriters' Request For An EUO, Warranting Immediate Dismissal of This Action ......................................................................... 29

C.   The Commencement Of This Lawsuit, And Accompanying Discovery, Do Not Extinguish The Underwriters' Right To An EUO ......................................................... 31

CONCLUSION ............................................................................. 35

## <u>Table of Authorities</u>

**Cases**

<u>Am. Cent. Ins. Co. v. J. B. Henninger & Co.</u>, 87 Ill. App. 440, 441-442

    (Ill. App. Ct. 1899) ................................................... 34

<u>Archie v. State Farm Fire & Cas. Co.</u>, 813 F. Supp. 1208, 1212 (D. Miss.

    1992) ................................................... 26

<u>Brindley v. Firemen's Ins. Co. of Newark, N.J.</u>, 113 A.2d 53 (N.J. Super.

    Ct. App. Div. 1955) ................................................... 18, 21

<u>Brizuela v. CalFarm Ins. Co.</u>, 10 Cal. Rptr. 3d 661, 667-668

    (Cal. Ct. App. 2004) ................................................... 28

<u>Catalogue Serv. of Westchester, Inc. v. Ins. Co. of N. Am.</u>, 425

    N.Y.S.2d 635, 637 (N.Y. App. Div. 1980) ................................................... 30

<u>Claflin v. Commonwealth Ins. Co.</u>, 110 U.S. 81, 94–95 (1884) ................................................... 26

<u>Dover Chem. Corp. v. Aetna Cas. & Sur. Co., et al.</u>, No. 89-CV-080293

    (Ohio Common Pleas Ct., Oct. 25, 1991) ................................................... 20

<u>Dyno-Bite, Inc. v. The Travelers Cos.</u>, 439 N.Y.S.2d 558 (N.Y.

    App. Div. 1981) ................................................... 33

<u>Fields v. Stalder</u>, 2001 U.S. Dist. LEXIS 16275 (D. La. 2001) ................................................... 17

<u>Firemen's Fund Ins. Co. v. Sims</u>, 42 S.E. 269, 271 (Ga. 1902) ................................................... 30

<u>Goldman v. State Farm Fire Gen. Ins. Co.</u>, 660 So.2d 300, 303 (Fla. Dist. Ct.

    App. 1995) ................................................... 29, 33

<u>Harris v. North British & Mercantile Ins. Co.</u>, 30 F.2d 94 (5th Cir. 1929) ................................................... 21

<u>Home Ins. Co. v. Olmstead</u>, 355 So.2d 310, 313 (Miss. 1978) ................................................... 28

Horton v. Allstate Ins. Co., 467 N.E.2d 284 (Ill. App. Ct. 1984)..................... 21, 34

In re Intercontinental Sec. Corp., 62 B.R. 16, 17 (Bankr. N.D. Ill. 1986).............. 30

Johnson v. Allstate Ins. Co., 602 N.Y.S.2d 876 (N.Y. App. Div., 1993).............. 33

Keith v. Allstate Indem. Co., 19 P.3d 1077, 1079 (Wash. Ct. App. 2001) ........... 27

Lentini Bros. Moving & Storage Co. v. N.Y. Prop. Ins. Underwriting Ass'n,
    422 N.E.2d 819 (N.Y. 1981) ........................................................... 31

Lentini Bros. Moving & Storage Co. v. N.Y. Prop. Ins. Underwriting Ass'n,
    428 N.Y.S.2d 684 (N.Y. App. Div. 1980)......................................... 32

McReynolds v. Christenberry, 233 F. Supp. 143 (S.D.N.Y. 1964)........................ 17

Miller v. Resorts Int'l Hotel, 363 F. Supp.2d 700, 703 (D.N.J. 2005)................... 17

Modern Homes v. Atlas Assur. Co., 108 A. 869 (N.J. 1919)................................. 18

Monticello Ins. Co. v. Mooney, 733 So. 2d 802, 810 (Miss. 1999) ...................... 27

Morales v. Pilgrim Ins. Co., 792 N.E.2d 997 (Mass. App. Ct. 2003).................... 27

Mortgagee Affiliates Corp. v. Commercial Union Ins. Co., 276 N.Y.S.2d
    404, 407 (N.Y. App. Div. 1967)....................................................... 30

New Jersey Auto. Full Ins. Underwriting Ass'n v. Jallah, 606 A.2d 839, 840
    (N.J. Super. Ct. App. Div. 1992) ...................................................... 32

Niagara Fire Ins. Co. of N.Y. v. Fitzsimmons, 139 A. 523
    (N.J. Ch. 1927)............................................................................ 18

Pervis v. State Farm Fire & Cas. Co., 901 F.2d 944, 947 (11th Cir. 1990)............ 26

Pini v. Allstate Ins. Co., 499 F. Supp. 1003, 1004 (E.D. Pa. 1980) ...................... 18

Purze v. Am. Alliance Ins. Co., 781 F. Supp. 1289, 1292 (N.D. Ill. 1991)............ 27

<u>Roberto v. Hartford Fire Ins. Co.</u>, 177 F.2d 811, 815 (7th Cir. 1949).................... 28

<u>Rosenthal v. Prudential Prop. & Cas. Co.</u>, 928 F.2d 493, 494 (2d Cir. 1991)........ 28

<u>Simonetti v. Niagara Fire Ins. Co.</u>, 74 F. Supp. 726, 728 (N.D.Ala. 1947) ........... 30

<u>State Farm Indem. Co. v. Warrington</u>, 795 A.2d 324, 331 (N.J. Super.
    Ct. App. Div. 2002) ................................................................................. 28

<u>Strick v. Pierce</u>, 607 F. Supp. 445 (D. Ill. 1985) ............................................... 22, 24

<u>Sturla v. Dir., Fed. Emergency Mgmt. Agency</u>, 1997 U.S. Dist. LEXIS
    14463 (D. Cal. 1997) ............................................................................... 21

<u>Sutton v. Fire Ins. Exch.</u>, 509 P.2d 418 (Or. 1973) ............................................ 25

<u>Tademy v. Scott</u>, 157 F.2d 826, 828 (5th Cir. 1946) ........................................... 17

<u>Thomson v. State Farm Ins. Co.</u>, 592 N.W.2d 82, 89 n.9 (Mich. Ct. App.,
    1998) ...................................................................................................... 33

<u>United Tech. Corp., et al. v. Liberty Mut. Ins. Co., et al.</u>, No. 87-7172
    (Mass. Super. Ct. Oct. 24, 1998) .......................................................... 19

<u>Van Horn v. State Farm Mut. Auto. Ins. Co.</u>, 283 F. Supp. 260, 261 (D. Mich.
    1966) ...................................................................................................... 17

<u>Yeo v. State Farm Ins. Co.</u>, 555 N.W.2d 893 (Mich. Ct. App. 1996),
    <u>appeal dismissed</u>, 558 N.W.2d 725 (Mich. 1997) ................................. 18

**Statutes**

FED. R. CIV. P. RULE 12 (b)(6)................................................................. 17

**Other Authorities**

12 <u>Couch on Insurance</u> § 176:56 (Thomson/West 2006) ......................... 4

13 <u>Couch on Insurance</u> § 196:29 (Thomson/West 2006) ....................... 18

14 Couch, <u>Cyclopedia of Insurance Law</u> § 49:373 (2d ed.) .................................... 25

46A C.J.S. <u>Insurance</u> § 1552 (Thomson/West 2006)............................................... 17

5 Appleman, <u>Insurance Law and Practice</u> § 3481 (1941)........................................ 21

<u>Insuring Real Property</u> § 22.01 (Stephen A. Cozen, ed. 2006).............................. 27

## PRELIMINARY STATEMENT

Plaintiff, Formosa Plastics Corporation, U.S.A. ("Formosa"), brought this suit seeking additional insurance proceeds from its various first-party property insurers ("Underwriters"), over and above the $44 million it has already received. By this motion, Underwriters seek dismissal of Formosa's suit as premature because:

1. Formosa has not submitted a detailed, sworn Proof of Loss;

2. Formosa has refused to submit to an examination under oath ("EUO").

Formosa is obligated by the applicable insurance contract to submit a "signed and sworn proof of loss" to Underwriters and, if requested, to submit to an EUO prior to commencing a litigation. The precise purpose of these prerequisites to suit is to prevent an insured from dragging its property insurer into court before the insurer is given an opportunity to assess its liability in accordance with the terms of the contract. Until Formosa has fully complied with these contractual requirements, this suit should not proceed.

In the alternative, Underwriters seek an Order staying this action and compelling Formosa's compliance with these contractual obligations.

# FACTS

## I.   INTRODUCTION

This action arises from an April 23, 2004, explosion that occurred at Formosa's plastics manufacturing facility in Illiopolis, Illinois, which resulted in five fatalities and a number of severe injuries.  Formosa submitted an insurance claim for its property damage under its first-party property coverage issued by a market of contributing first-party insurers and four reinsurers.[1]  The first-party insurers, against whom this action is pending include: ACE American Insurance Company, Zurich American Insurance Company, New Hampshire Insurance Company, Commonwealth Insurance Company, Arch Specialty Insurance Company, Everest Reinsurance (Bermuda) Ltd., Allied World Assurance Company, Ltd., Lloyd's Syndicate 1200 (AA-1127200)(UK), Lloyd's Syndicate 1221 (UK), Lloyd's Syndicate 282 (UK), and Lloyd's Syndicate 2003 (UK). (Compl., Ex. 2)  Two additional market participants, XL and Endurance, are

---

[1] The four reinsurers actually reinsure Isosceles Insurance Company, a captive facility utilized by Formosa, but have participated in all activities with the first-party market in handling Formosa's claim. These reinsurers are not a part of the present lawsuit, because they are currently involved in a simultaneous arbitration proceeding with Formosa in Bermuda pursuant to their contract wording.  (See Arbitration Notice, dated April 20, 2006 a copy of which is attached as Exhibit 1 ("Ex. 1"),  to the accompanying January 5, 2007 Affidavit of Jeffrey S. Weinstein ("Weinstein Aff.").

currently involved in an arbitration proceeding in London (pursuant to their contract wording) and are not parties to this litigation.[2]

Underwriters retained the services of Andy Stein, an adjuster with Crawford & Co., to investigate the cause and origin, and to adjust the amount, of the loss. On June 11, 2004, a reservation of rights letter was issued on behalf of Underwriters, requesting additional documentation regarding the loss and identifying a number of issues requiring investigation. (Ex. 4)

## II.  CAUSE AND ORIGIN INVESTIGATION/REQUEST FOR PROOF AND EUO

Underwriters conducted a thorough examination into the cause and origin of the loss in order to determine whether the event was covered and, if so, whether there was a possibility of subrogation. Underwriters ultimately accepted coverage on March 1, 2005 and turned their attention to the ongoing but arduous process of quantifying Formosa's loss.  (Ex. 5)  Once coverage was determined, questions persisted regarding whether Formosa was entitled to recovery on an "actual cash value" basis or on a "replacement cost" basis,[3] with many subsidiary questions as to the correct quantum valuations under each basis of recovery.

_____

[2] Despite some minor differences in additional wording (e.g., endorsements) among several of the insurers, the parties have consistently throughout the adjustment process relied on the Property Policy Form known by the parties as the "Hiscox wording" (the "Policy"). (Ex. 3)

[3] "Replacement cost coverage was devised to remedy the shortfall in coverage which results under a property insurance policy compensating the insured for

The two most significant facts for purposes of this motion are Formosa's deliberate non-compliance with the Policy's "Proof of Loss" and "Examination Under Oath" provisions:

24.   **<u>PROOF OF LOSS</u>**

The Insured will:

A.    Give a <u>signed and sworn proof of loss</u> to the Company within 90 days after the loss, unless that time is extended in writing by the Company. The proof of loss must state the knowledge and belief of the Insured as to:

    (1)  The time and origin of the loss;

    (2)  The Insured's interest and that of all others in the property;

    (3)  <u>The actual cash value and replacement value of each item and the amount of loss to each item;</u> all encumbrances; and all other contracts of insurance, whether valid or not, covering any of the property;

    (4)  Any changes in the title, use, occupation, location, possession or exposures of the property since the effective date of this Policy; and

    (5)  By whom and for what purpose any location insured by this Policy was occupied on the date of loss, and whether or not it then stood on leased ground.

B.    <u>Include a copy of all the descriptions and schedules in all policies and, if required, provide verified plans and specifications of any buildings, fixtures, machinery or equipment destroyed or damaged.</u>

C.    Further, the Insured will <u>as often as may reasonably be required:</u>

---

actual cash value alone. That is...replacement cost insurance allows recovery for the actual value of property at the time of loss, without deduction for deterioration, obsolescence, and similar deprecation of the property's value." 12 <u>Couch on Insurance</u> §176:56 (Thomson/West 2006)(citation omitted).

(1) Exhibit to any person designated by the Company all that remains of any property;

(2) <u>Submit to examinations under oath by any person designated by the Company and sign the written records of examinations</u>; and

(3) Produce for examination at the request of the Company:
    (a) All books of accounts, business records, bills, invoices and other vouchers; or
    (b) Certified copies if originals are loss;
at such reasonable times and places that may be designated by the Company or its representative and permit extracts and machine copies to be made.

(Policy, Ex. 3, ¶ 24) (emphasis added).

In addition to the obligations set forth in the "Proof of Loss" clause, the Policy also requires the insured to:

C. Promptly separate the damaged and undamaged property; put it in the best possible order; and furnish a complete inventory of the lost, destroyed, damaged and undamaged property showing in detail the quantities, costs, actual cash value, replacement value and amount of loss claimed.

(Policy, Ex. 3, ¶ 23C)

The necessity for an insured to comply with these clauses before proceeding with litigation against its insurer is clearly and specifically reflected in the Policy's "Suit Against the Company" clause:

## 32.  <u>SUIT AGAINST THE COMPANY</u>

No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless:

1) <u>The Insured has fully complied with all the provisions of this Policy</u>;

(Policy, Ex. 3, ¶ 32 (emphasis added))

Formosa is obviously aware of its obligation to file a Proof of Loss.  In fact, by letter dated August 10, 2004, Formosa requested an interim payment and also an extension of time for filing the Proof of Loss required by the Policy. (Ex. 6)  In response to this and subsequent requests for such extensions, Underwriters extended the Proof of Loss deadline, first to October 23, 2004 (Ex. 7), and then again multiple times, including to January 23, 2005 (Ex. 8), April 23, 2005 (Ex. 9), August 17, 2006 (Ex. 10), and finally to October 25, 2006 (Ex. 11).

Formosa will no doubt claim that it finally supplied its "signed and sworn proof of loss" on October 25, 2006.  The document in question is woefully inadequate by any measure.  (See infra, pp. 14-16)  Equally as important, Formosa is well aware that in response to Underwriters' receipt of a similarly inadequate initial, partial Proof (for a relatively minor advance of $6,476,537) provided on December 13, 2004 (Ex. 12),[4] on January 4, 2005 (Ex. 9) Underwriters requested an EUO. [5]    In addition to their investigation of the components of the initial, partial Proof, Underwriters also sought the EUO to supplement their cause and

---

[4] In that letter, Formosa acknowledged that the "final proof of loss will be a recap of the partial proofs of loss plus any additional elements of damage for which a partial proof of loss had not yet been submitted."

[5] The EUO was to be conducted on behalf of the participating insurers, with the exception of XL and Endurance, which had by then already commenced their London arbitration.

origin investigation to determine whether there was coverage at all, which was subsequently resolved by March 1, 2005. (Ex. 5)  Although Formosa responded to the January 4, 2005 EUO demand on January 19, 2005 by specifically acknowledging Underwriters' right to take the EUO (see Ex. 13), Formosa requested that Underwriters defer the examination on the "proof"-related topics, stating, "[p]erhaps Underwriters would consider adjourning examination on these topics in order to concentrate on concluding the cause and origin investigation." (Ex. 13) (Emphasis added).  Formosa's request corresponded with Underwriters' position as expressed in the original EUO demand:

> Underwriters agree to an additional extension of ninety days to April 23, 2005, for Formosa to file its final, complete Proof of Loss.  Please bear in mind, however, that the examination under oath will not be concluded until the final Proof of Loss has been filed and the examiner has had the opportunity to inquire concerning its contents.

(Ex. 9)  Underwriters thus agreed to proceed as Formosa requested, premised on their receiving a compliant signed and sworn Proof of Loss.

Instead of complying with these important and necessary contractual obligations, however, Formosa filed this lawsuit (Ex. 2) and is now blocking Underwriters' attempt to enforce these Policy requirements, which illustrates clear non-compliance with the "Suit Against Company" clause.   (Supra p. 5)  A

premature suit such as this is expressly prohibited by the Policy under that provision, which is regularly held to be valid by federal and state courts.

By this motion, Underwriters request that the Court decline to allow Formosa to use this lawsuit as a device to evade its contractual obligations, and to permit Underwriters to enforce the contractual rights they bargained for: Formosa's full compliance with these obligations before any cause of action for payment under the first-party insurance contract accrues.

### III.   PRIOR PAYMENTS BY UNDERWRITERS

After the cause-and-origin investigation was completed, and Underwriters agreed that Formosa had suffered a covered loss (Ex. 5), Underwriters turned to adjustment of the claim. During the course of the adjustment phase, Underwriters made a number of advance payments, which included undisputed property damage amounts on an actual cash value basis, fitness testing of reactors on site, decontamination (per $2.5 million sublimit), and pollution clean-up (per $250,000 sublimit). The payments, which totaled $44,379,637, were based on information compiled by Underwriters' adjusters and consultants and constituted undisputed amounts.  These payments were evidenced by Acknowledgments signed by Bob Chou, Formosa's Vice President.  (Ex. 14)

## IV.  THE  DISPUTE  OVER  PROPER  VALUATION  OF FORMOSA'S LOSS

The parties' current dispute involves, <u>inter alia</u>, the proper basis of Formosa's recovery under the Policy's Valuation provision. (<u>See</u> Policy, Ex. 3, ¶ 13, I.(8)(b))  It became apparent early on that Formosa had no plans to rebuild the Illiopolis facility at Illiopolis. In accordance with the Valuation provision, therefore, Formosa's recovery would be limited to an "actual cash value" basis. (<u>See id.</u>)  In April 2005 (Ex. 15), however, Formosa requested Underwriters to consider Formosa's proposed facility in Point Comfort, Texas, to be a "replacement" facility so that it could recover on a replacement cost basis.[6] An exchange of correspondence ensued between Formosa's representatives and adjuster Stein.

As 2005 drew to a close, it became quite evident that there was little progress being made at the proposed Point Comfort "replacement" facility, and therefore Formosa would not be replacing or rebuilding the Illiopolis facility "on the same site or another site within two years from the date of loss."  Formosa nevertheless continued to request that Underwriters consider the proposed Point Comfort location as a "replacement" in order to enable Formosa to recover on a replacement cost basis.  Instead of insisting on the letter of the contract,

---

[6] The Valuation provision requires that the adjustment be at "actual cash" value if the property is "[n]ot repaired, replaced or rebuilt on the same or another site within two years from the date of loss." (Ex. 3)

Underwriters on November 3, 2005 set forth four criteria by which Formosa could demonstrate its financial commitment to and progress toward actual replacement at Point Comfort by the two-year anniversary of the loss.  (Ex. 16)  Underwriters were under no obligation, contractual or otherwise, to make such a commitment, because it was patently obvious that Point Comfort could not be completed (indeed, construction had not even begun) by April 23, 2006.  Nevertheless, Underwriters made this significant accommodation to Formosa in order to facilitate the adjustment process and, in essence, to give Formosa the "benefit of the doubt."

These criteria were reiterated by Underwriters on February 21, 2006, along with a reminder that all claimed costs in connection with the Point Comfort project must <u>actually be incurred</u> before the loss could be adjusted on a replacement cost basis.  (Ex. 17)  Following a March 8, 2006 "principals-only" meeting between Formosa and Underwriters' representatives, Underwriters reiterated these concepts on March 15, 2006 (Ex. 19) (in response to Formosa's March 9, letter – Ex. 18), on March 22, 2006 (Ex. 20),[7] and on March 30, 2006 (Ex. 21), again agreeing to consider the Point Comfort location as a "replacement" in order to value the loss on a higher "replacement cost" basis, even though the Illiopolis facility would not

_____

[7] Andy Stein received this copy from Alice Edwards, although it was stamped "Draft."  This also occurred with other letters received by Stein from Formosa that appear to be in draft form, without letterhead.

have been "rebuilt on...another site...within two years from the date of loss." (See "Valuation" clause, Policy, Ex. 3, ¶ 13, I.(8)(b))  Underwriters also confirmed and re-confirmed a six-month extension of the time period in which to bring suit on the Policy. (Ex. 21) Letters between the parties confirming and re-confirming the agreement also were exchanged on April 13, 2006, April 18, 2006, April 19, 2006, and April 21, 2006. (Exs. 22, 23, 24, and 25, respectively)  Thus, by the two-year anniversary of the explosion, the adjustment process should have continued without prejudice either to Formosa or to Underwriters.

## V.   FORMOSA COMMENCES LITIGATION

Although Underwriters agreed to consider the Point Comfort project as a "replacement" for Formosa's Illiopolis manufacturing operation, agreed to extend Formosa's obligation to file a Proof of Loss, and repeatedly confirmed that the Policy's two-year time for suit had been extended, on April 21, 2006, as the two-year anniversary of the loss neared, Formosa filed suit against Underwriters (Ex. 26) purportedly "as a protective measure." (Ex. 27) Formosa advised that the lawsuit would be withdrawn once Formosa "received clear confirmation that the markets ... agree that the claim will be paid on a replacement cost basis" (Ex. 27) (which had in fact been confirmed to Formosa several times).  By letter dated May 5, 2006 (Ex. 28), and again on May 18, 2006 (Ex. 30), responding to Formosa's letter of May 9, 2006 (Ex. 29), Underwriters responded to the proposed

discontinuance of the lawsuit and reiterated their demand for a sworn Proof of Loss

in accordance with the Policy.   Underwriters required that an adequate Proof be

filed, not only to obtain the crucial detail needed to evaluate the components of the

claim beyond what had already been paid as undisputed, but also to determine

whether any remaining differences could be resolved by an Appraisal[8] rather than

through litigation. (Ex. 30)   Significantly, in his May 9 letter (Ex. 29), Formosa's

Risk Manager, Norberto Torres, stated that:

> [C]ompletion of such a proof for a matter of the size and
> complexity of the Illiopolis loss could be quite time
> consuming and expensive.  We therefore propose that we
> discuss the necessity for submission of a formal proof of
> loss (and a schedule for submission) during our May
> talks.  Of course, we remain hopeful that our May talks
> will resolve this claim, in which case a response to the
> Market Members' demand for a formal proof of loss may
> not be necessary.

On May 24, 2006, Formosa again outlined the terms under which it would

consider temporarily withdrawing the lawsuit, this time including as a condition to

withdrawal of the suit an extension of the "request for submission of a formal

proof of loss." (Ex. 31)   On June 1, 2006, Underwriters reiterated their prior

agreement to defer again Formosa's Proof of Loss submission until August 17,

2006, provided that negotiations in lieu of litigation would continue. (Ex. 32)

---

[8] See Policy, Ex. 3, ¶ 40.

On June 20, 2006, Formosa and Underwriters entered into a Tolling Agreement, acknowledging that no Proof of Loss had yet been submitted by the insured.  (Ex. 33)  The Tolling Agreement expressly provided that the parties retained their respective rights as of the date of that Agreement, and that the Agreement would "in no way affect, waive, or limit any existing rights, policy conditions, or defenses of the Parties," unless specifically set forth in the agreement.  (Id.)  The Agreement also stated that once it expired, Formosa would be allowed to re-file its suit before Underwriters took any legal action; Formosa was, however, also required to present its "signed and sworn proof of loss" within three days of such filing.  (Ex. 32)  Although Formosa believed it necessary to assure itself of the opportunity to "strike first" by agreeing to file the Proof virtually simultaneously with the Complaint, Formosa still was obligated to comply with the Policy and to give Underwriters the required information so that Underwriters could: (1) evaluate Formosa's claim; (2) understand the differences in the parties' respective evaluations; and (3) if appropriate, consider whether an Appraisal procedure (as set forth in the Policy) could bring the Parties closer together. The assumption that Formosa would eventually file an adequate Proof (as had been indicated by Norberto Torres - See Ex. 29) was at the heart of Underwriters' decision to enter into the Tolling Agreement.

Negotiations regarding adjustment of the claim continued, without success. Formosa then re-filed its Complaint in this action (Ex. 2), alleging that "Formosa has satisfied all conditions precedent to recovery under the policies, or, by their action or failure to act, the Insurance Companies have waived compliance with all such conditions." (Ex. 2)  The Complaint states, as the basis for Formosa's only "Claim for Relief," that "[t]he Insurance Companies have refused to indemnify, or to acknowledge a duty to indemnify, Formosa for the entirety of the covered loss and damage as a result of the fire and explosion at the Illiopolis facility," and alleges that "[t]he Insurance Companies' failure to indemnify Formosa for the entirety of the covered loss and damage as a result of the fire and the explosion at the Illiopolis facility constitutes a breach of the policies." (Ex. 2, ¶¶ 36 and 37)

Not surprisingly, the suit nowhere mentions Formosa's obligation to provide a "signed and sworn proof of loss," the parties' option to conduct an Appraisal once an adequate Proof is delivered, or Underwriters' continuing right to conduct an EUO.

## VI.   FORMOSA'S OCTOBER 25, 2006 "PROOF"

After filing this action, on October 25, 2006, Formosa forwarded to Underwriters a document its counsel described as "an initial Sworn Statement in Proof of Loss," asserting a "Whole Loss" figure of $175,119,596.  (Ex. 34) Incredibly, this document even now purports to leave open the possibility of

14

additional claim submissions.  This document was hardly the product of the "quite time consuming and expensive" exercise indicated by Torres in his May 9, 2006 letter.  (Ex. 29)

By letters dated October 31, 2006 (Ex. 35), and November 6, 2006 (Ex. 36), Underwriters rejected the document for its fatal deficiencies:

- the "Whole Loss" figure, while purporting to present a claim that Underwriters are alleged in the Complaint to have denied, obviously includes $44,379,637 that actually was adjusted and paid by Underwriters previously, thus constituting a duplicative and therefore invalid claim;

- contrary to the Policy terms, Formosa's Proof apparently is based on estimated costs not yet incurred by Formosa, as opposed to incurred losses;

- the document was unaccompanied by any breakdown, details, schedules, backup materials, or any indication of how Formosa arrived at the "Whole Loss" figure of $175,119,596;

- Formosa's supposed "Whole Loss" figure appears to include some $21,233,475 that Formosa's representatives had previously expressly admitted were arithmetical errors that should have been removed from the claim;

- the document is signed by Mr. Roe Vadas, a "Plant Manager," despite the absence of any indication that Mr. Vadas is a corporate officer or otherwise authorized to execute a Proof of Loss on Formosa's behalf.[9]

(Exs. 35 and 36)   Without an adequate Proof, Underwriters cannot determine exactly what the claim consists of, or whether Appraisal would be a viable alternative to litigation.

Moreover, although it would not eliminate Formosa's obligation to file a compliant Proof of Loss, the information that should be contained and sworn to could be explained through the EUO, which is exactly why the Policy contains this procedure and exactly why Underwriters demanded the EUO in their October 31, letter.   Yet, despite Underwriters' commitment to the continuation of the adjustment process, and notwithstanding the partial payments made to Formosa by Underwriters, on November 6, 2006, Formosa formally declined to submit to the EUO, claiming that "the Carriers have breached the policy by refusing to accept the totality of Formosa's claim," and asserted that its Proof was adequate.  (Ex. 37)

---

[9] Incidentally, Formosa's December 13, 2004 Proof was appropriately signed by Norberto Torres, Formosa's Risk Manager.  (Ex. 12)

## ARGUMENT

## I.    THIS ACTION IS PREMATURE AND SHOULD BE DISMISSED UNDER FED. R. CIV. P. RULE 12(b)(6)

Formosa's suit, premised on Underwriters' alleged failure to pay a claim that -- according to the Policy -- has not even been properly made, is by definition premature. "An action on an insurance policy filed before the right of action has accrued is premature." 46A C.J.S. Insurance §1552 (Thomson/West 2006) (citation omitted). See also McReynolds v. Christenberry, 233 F. Supp. 143 (S.D.N.Y. 1964) (even were it possible to spell out a controversy, co-existent with the doctrine requiring the existence of an actual controversy is the doctrine that the controversy must be 'ripe' for determination) (citations omitted).   A motion to dismiss under Federal Rule of Civil Procedure 12 is the appropriate procedural vehicle to address this situation. "[A] complaint may be subject to dismissal . . . when an affirmative defense . . . appears on its face." Miller v. Resorts Int'l Hotel, 363 F. Supp.2d 700, 703 (D.N.J. 2005) (citation omitted). "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Id. (citation omitted). See also Van Horn v. State Farm Mut. Auto. Ins. Co., 283 F. Supp. 260, 261 (D. Mich. 1966) (action dismissed pursuant to Rule 12(b)(6) as premature where arbitration was prerequisite to suit); Fields v. Stalder, 2001 U.S. Dist. LEXIS 16275 (D. La. 2001) (upholding 12(b)(6) motion to dismiss based on prematurity); Tademy v. Scott, 157 F.2d 826, 828 (5th Cir. 1946) (action dismissed

for prematurity on the ground that notice and opportunity for retraction and apology had not been given to the paper as required by the Georgia statute governing libel actions).

The Policy expressly requires compliance with all contract terms as a prerequisite to seeking enforcement of the Policy as against the insurer:

**32.   <u>SUIT AGAINST THE COMPANY</u>**

<u>No suit, action or proceeding for recovery of any claim will be sustained in any court of law or equity unless:</u>

<u>1) The Insured has fully complied with all the provisions of this Policy....</u>

(Policy, Ex. 3, at ¶ 32 (emphasis added))

"No suit" provisions such as this are enforceable. <u>See, e.g., Modern Homes v. Atlas Assur. Co.</u>, 108 A. 869 (N.J. 1919) (plaintiff's failure to comply with policy requirements, including failure to provide a proof of loss, was fatal where policy stated that full compliance was a prerequisite to suit); 13 Couch on Insurance, §196:29 (Thomson/West 2006). <u>See also Niagara Fire Ins. Co. of N.Y. v. Fitzsimmons</u>, 139 A. 523 (N.J. Ch. 1927); <u>Brindley v. Firemen's Ins. Co. of Newark, N.J.</u>, 113 A.2d 53 (N.J. Super. Ct. App. Div. 1955); <u>Pini v. Allstate Ins. Co.</u>, 499 F. Supp. 1003, 1004 (E.D. Pa. 1980) ("The insured's failure to adhere to policy conditions constitutes an "absolute bar" to suit unless the insurer waives its right to rely thereon or its conduct estops it from doing so.")  (citations omitted); <u>Yeo v. State Farm Ins. Co.</u>, 555 N.W.2d 893 (Mich. Ct. App. 1996), <u>appeal</u>

dismissed, 558 N.W.2d 725 (Mich. 1997) (where a policy provides that the insured "must submit to an examination when requested by the company, and further provides that an action cannot be maintained until there has been full compliance with the terms of the policy…an action cannot be prosecuted until such questions are answered.").

In United Tech. Corp., et al. v. Liberty Mut. Ins. Co., et al., No. 87-7172 (Mass. Super. Ct. Oct. 24, 1998), the insured filed for declaratory judgment before compliance with pre-suit policy requirements. There, as here, the contracts at issue expressly prohibited suit before completion of pre-suit procedures. The Superior Court of the Commonwealth of Massachusetts granted the first-party insurers' motion to dismiss, stating:

> Basic information relating to the physical damage and value of losses now alleged were not made to determine coverage. Instead, the plaintiffs began the required pre-suit procedures with the filing of the complaint, making it impossible for the Property Insurers, by definition, to engage in pre-litigation procedures.
>
> *    *    *    *
>
> One can only conclude that the plaintiffs' conscious choice to begin this preemptive suit is an attempt to circumvent non-judicial procedures required by the policies.

UTC Memorandum of Decision at 3 and 5.[10]  (Ex. 38)

Because the contract expressly precludes an action against Underwriters absent full compliance with the Policy's provisions, and in the clear absence of such full compliance, this action should be dismissed. There can be no reasonable question that Formosa did not file an adequate proof of loss, or that Formosa is using this litigation to sidestep its obligation to submit to an EUO. Formosa's "protective" lawsuit cannot be used as a weapon to subvert its contractual obligations.

## II.   THE LAWSUIT SHOULD BE DISMISSED BECAUSE FORMOSA HAS FAILED TO SUBMIT A SUFFICIENT PROOF OF LOSS

### A.   Submission Of a Proper Proof is a Prerequisite to Recovery

The Policy requires the insured to submit a signed and sworn Proof of Loss that includes, among other things, "[t]he actual cash value and replacement value of each item and the amount of loss to each item; all encumbrances; and all other contracts of insurance, whether valid or not, covering any of the property." (Policy, Ex. 3, ¶ 24)  Additionally, the Policy requires the insured to "furnish a complete inventory of the lost, destroyed, damaged and undamaged property showing in detail the quantities, costs, actual cash value, replacement value and amount of loss claimed." (Policy, Ex. 3, ¶ 23)

---

[10] A similar motion to dismiss by first-party insurers was granted without opinion in Dover Chem. Corp. v. Aetna Cas. & Sur. Co., et al., No. 89-CV-080293 (Ohio Common Pleas Ct., Oct. 25, 1991).

It has long been settled that "Proof of Loss" provisions are valid and enforceable, and that failure to file a Proof of Loss mandates dismissal of a prematurely-filed litigation. See, e.g., Brindley v. Fireman's Ins. Co. of Newark, N.J., 113 A.2d 53 (N.J. Super. Ct. App. Div. 1955), citing 5 Appleman, Insurance Law and Practice § 3481 (1941) ("A policy requirement of proofs of loss is reasonable and valid. Such proof is an essential element which must be demonstrated in the assured's case and is considered a condition precedent to recovery."); see also Harris v. North British & Mercantile Ins. Co., 30 F.2d 94 (5th Cir. 1929) (upholding state court's grant of insurer's motion to dismiss because the requirement of a proof of loss by the insured was a condition precedent to the right to maintain an action against the insurer); Sturla v. Dir., Fed. Emergency Mgmt. Agency, 1997 U.S. Dist. LEXIS 14463 (D. Cal. 1997) (holding that homeowners had engaged in undue delay and granted motion to dismiss because the homeowners had not filed proof of loss). Thus, until Formosa has complied with the Policy's Proof of Loss requirement it cannot enforce a claim under that very policy.

In addition, a proof of loss must be sufficiently detailed to allow the insurer to form an intelligent estimate of its rights and liabilities. See, e.g., Horton v. Allstate Ins. Co., 467 N.E.2d 284 (Ill. App. Ct. 1984) (holding that the insurance policy permitted the insurer to require detailed proofs and additional

21

documentation from its insured).   In <u>Strick v. Pierce</u>, 607 F. Supp. 445 (D. Ill. 1985), the insured, whose store had been burglarized, sought recovery under an insurance policy issued under the Federal Crime Insurance Program. The policy provided that the insured should keep records so that the amount of the loss could be accurately determined, that the insured should submit a sworn proof of loss within a certain number of days of discovery of the loss, and that the insured was barred from bringing suit unless he had complied with all the terms of the policy. Because the insured failed to submit a sworn proof of loss within the requisite time period, and because he did not accurately document the amount of the loss, the court granted a motion to dismiss the complaint. <u>See</u> <u>id.</u>

**B.**   **The Purported Proof Submitted By Formosa Is Inadequate, Warranting Dismissal of This Action**

On October 20, 2006, upon expiration of the Tolling Agreement, Formosa filed this action against Underwriters.  (Ex. 2)  The Tolling Agreement required that Formosa file its Proof within three days after filing suit. (Ex. 33)  Underwriters agreed to this sequence only because Formosa had committed to filing an adequate Proof so that Underwriters could assess the differences in quantum evaluations and determine whether the Parties could pursue an Appraisal under the Policy.  Even if Appraisal is not possible (for instance, if there are legal or coverage issues beyond the parameters of an Appraisal proceeding), the Proof is a necessary predicate that Formosa must comply with before proceeding with litigation.  The purported Proof

22

of Loss submitted by Formosa does not satisfy the requirements of the Policy.  On October 25, 2006 (following a last-minute two-day extension granted by Underwriters, further evidence that Underwriters were expecting to receive a substantial and well-supported document), Formosa submitted a one-page document that its counsel identified as an "initial" Proof of Loss, stating that "[a]dditional costs are expected and will be reflected in supplementations to the Proof…Formosa reserves the right to supplement this initial proof of loss as necessary."  (Ex. 34)  Despite its commitment to provide a substantial, final, detailed Proof of Loss (Ex. 29),  Formosa's October 25, 2006 submission is a single page boiler-plate printed form in which Formosa merely fills in a "Whole Loss" figure of $175,119,596 and provides no supporting documentation whatsoever.  Formosa's submission fails to list the "actual cash value and replacement value of each item and the amount of loss to each item," as is required by the Policy. (Policy, Ex. 3, supra, p. 4)  By this submission, Formosa also breached its obligation to "furnish a complete inventory of the lost, destroyed, damaged and undamaged property showing in detail the quantities, costs, actual cash value, replacement value and amount of loss claimed."  (Policy, Ex. 3, p. 5, supra)

Underwriters rejected Formosa's submission and identified its manifest deficiencies.  (Exs. 35 and 36)  On November 6, 2006, in a letter from counsel,

Formosa stated that it refused to comply with the Policy's terms and conditions, claiming that "supportive information has already been provided to the carriers." (Ex. 37)  In the course of several meetings and in various correspondence, Formosa has indeed submitted many documents in connection with its claim.  But Formosa has never compiled a complete, systematic, transparent set of back-up materials representing its entire loss and, more importantly, has never <u>sworn to their</u> <u>accuracy</u>.

> Obviously, this requirement is not trivial. Moreover, neither . . . [policy issuer] nor this Court is required to sort through numerous documents to determine whether the information requested on the proof of loss statement is 'essentially' the same as that provided by plaintiff.  [The carrier] . . . is entitled to require those it insures to submit information in the format specified.  Plaintiff did not submit the proof of loss despite having been given an extension of time to do so and having been advised in writing of the deadline for filing the proof of loss.

<u>Strick</u>, 607 F. Supp. at 447.

The Policy issued to Formosa expressly requires submission of a detailed, sworn proof of loss and adequate supporting information.  (<u>See</u> Policy, Ex. 3 ¶¶ 23 and 24)  Underwriters have never received documentation to support a claim of $175,119,596, nor was such documentation included in a signed and sworn Proof of Loss as the Policy requires.  Thus, there can be no dispute that Formosa has breached the Policy condition that "The Insured will… Give a signed and sworn proof of loss to the Company [and that] [t]he proof of loss must state the

24

knowledge and belief of the Insured as to… [t]he actual cash value and replacement value of each item and the amount of loss to each item," and to include in its signed and sworn Proof of Loss "a copy of all the descriptions and schedules in all policies and, if required, provide verified plans and specifications of any buildings, fixtures, machinery or equipment destroyed or damaged." (Policy, Ex. 3, ¶ 24)

It is axiomatic that "[t]he purpose of a provision for proof of loss is to afford the insurer an adequate opportunity for investigation, to prevent fraud and imposition upon it, and to enable it to form a [sic] intelligent estimate of its rights and liabilities before it is obliged to pay. Its object is to furnish the insurer with the particulars of the loss <u>and all data necessary to determine its liability</u> and the amount thereof." <u>Sutton v. Fire Ins. Exch.</u>, 509 P.2d 418 (Or. 1973), citing 14 Couch, <u>Cyclopedia of Insurance Law</u> § 49:373 (2d ed.) (emphasis added).

Underwriters cannot possibly form an intelligent estimate of their rights and liabilities for a claim of over $175 million on the basis of a one-page Proof of Loss that omits not only the data necessary to enable Underwriters to determine their liability, but also any explanation of how Formosa arrived at its figures. Because it has failed to submit a sufficient Proof of Loss, Formosa is precluded by the contract from pursuing any action for recovery under the Policy, and the lawsuit should be dismissed.

### III.   FORMOSA'S REFUSAL TO SUBMIT TO AN EUO INDEPENDENTLY WARRANTS DISMISSAL

**A.   An Examination Under Oath Is An Insurer's Absolute Right Granted By The Policy.**

As a direct consequence of Formosa's inadequate, uninformative Proof (which Underwriters had been awaiting for many months), Underwriters reiterated their right to conduct an EUO. (Ex. 35)  Despite having acknowledged this right in January of 2005 (Ex. 13), Formosa now has stated it will not comply.  (Ex. 37) Formosa's refusal to submit to the examination is itself a complete defense to coverage.

The United States Supreme Court has recognized that the object of an insurance policy's EUO provision is to allow the insurer to learn all material facts necessary in order to determine its obligation and to protect itself against fraudulent claims. See Claflin v. Commonwealth Ins. Co., 110 U.S. 81, 94–95 (1884); see also, Pervis v. State Farm Fire & Cas. Co., 901 F.2d 944, 947 (11th Cir. 1990) (an examination under oath is a condition precedent to suit commonly used in insurance policies and has been upheld by many courts); Archie v. State Farm Fire & Cas. Co., 813 F. Supp. 1208, 1212 (D. Miss. 1992) ("Insurance policy clauses mandating oral examinations have been upheld . . . . A consequence of this well-established and well-ingrained policy is that an insured's refusal to submit to an examination under oath in violation of the express provisions of the insurance

policy renders the policy void.") (citations omitted); Morales v. Pilgrim Ins. Co., 792 N.E.2d 997 (Mass. App. Ct. 2003) (upholding summary judgment for the insurer on the ground that the plaintiffs forfeited coverage when they refused to participate in an examination under oath because examinations under oath are designed to aid the insurer in establishing the legitimacy of a claim); Monticello Ins. Co. v. Mooney, 733 So. 2d 802, 810 (Miss. 1999) ("A policy is rendered void where an insured either fails to submit to an examination under oath or refuses to answer material questions during an examination under oath.") (citation omitted); Keith v. Allstate Indem. Co., 19 P.3d 1077, 1079 (Wash. Ct. App. 2001) (holding that the policy provision requiring an examination under oath is a valid, enforceable contract provision). "The examination under oath enables the insurer to obtain all documents and information in the possession of the insured that are material to the claim so that the company may evaluate its rights and obligations under the policy. It is an efficient device for expediting the evaluation, settlement or adjustment of valid claims, and for detecting and discouraging improper or exaggerated claims." Douglas Houser, "Examination Under Oath," in Insuring Real Property § 22.01 (Stephen A. Cozen, ed. 2006).

"Where an insurance policy makes it incumbent on the insured, in the event of a loss, to produce his books or invoices for examination, he must comply with such provision or he cannot recover." Purze v. Am. Alliance Ins. Co., 781 F. Supp.

1289, 1292 (N.D. Ill. 1991) (citation omitted); see also State Farm Indem. Co. v. Warrington, 795 A.2d 324, 331 (N.J. Super. Ct. App. Div. 2002) (holding that the insured's obligation to cooperate with an examination under oath provision was pursuant to a private contract, and that he had no blanket privilege to refuse to comply with that obligation); Roberto v. Hartford Fire Ins. Co., 177 F.2d 811, 815 (7th Cir. 1949) ("A stipulation in a policy for examination of the assured is valid, and performance thereof is a condition precedent for recovery.").

Other jurisdictions similarly hold that an insured's failure to comply with the examination under oath requirement once demanded by the insurer is an absolute defense to a claim for coverage. See Brizuela v. CalFarm Ins. Co., 10 Cal. Rptr. 3d 661, 667-668 (Cal. Ct. App. 2004) ("An insured's compliance with a policy requirement to submit to an examination under oath is a prerequisite to the right to receive benefits under the policy. . . . If the insured cannot bring himself within the terms and conditions of the policy he cannot recover.") (citations omitted.); Rosenthal v. Prudential Prop. & Cas. Co., 928 F.2d 493, 494 (2d Cir. 1991) ("The insured's compliance with a request to appear at an EUO is a condition precedent to the insurer's obligation to indemnify. The insured's willful failure to appear at an EUO constitutes a material breach of the cooperation clause and a defense to an action on the policy.") (citations omitted); Home Ins. Co. v. Olmstead, 355 So.2d 310, 313 (Miss. 1978) ("[T]he refusal of the insureds to submit to an examination

under oath [is a] violation of the express provisions of the insurance policy [and] will result in forfeiture of the insureds' right to recover under the policy.") (citation omitted); Goldman v. State Farm Fire Gen. Ins. Co., 660 So.2d 300, 303 (Fla. Dist. Ct. App. 1995) (holding that an insured's refusal to comply with a demand for an examination under oath is a willful and material breach of an insurance contract which precludes the insured from recovery under the policy) (citations omitted).

**B.    Formosa Has Failed To Submit To Underwriters' Request For An EUO, Warranting Immediate Dismissal of This Action**

Despite express policy language requiring Formosa to submit to the EUO, Formosa has expressly refused to allow the examination, which necessitates the dismissal of this action.  In January 2005, Underwriters notified Formosa that they would avail themselves of their right, under paragraph 24 of the Policy, to conduct an EUO of certain Formosa witnesses. (Ex. 9)  In response to Formosa's request, the EUO topics relating to the proof were deferred until the final Proof of Loss was filed.[11] (Ex. 13)  Upon the parties' failure to reach a negotiated settlement of the claim, in October 2006, Underwriters reasserted their EUO demand to resolve the remaining questions in the adjustment, including the outstanding topics identified by Mr. Stein. (Ex. 35)  Formosa, however, rejected this demand.  (Ex. 37)

---

[11] In lieu of the EUO on "cause and origin issues," Formosa offered to make available seven witnesses for informal interviews to be conducted by adjuster Stein.  Because these interviews had previously been sought by Stein without success, Underwriters agreed to this request in the hope that it would facilitate the completion of the cause and origin investigation.

Underwriters are thus left without an adequate Proof of Loss <u>and</u> without the contractually prescribed method to obtain additional information to support Formosa's claim, and are thus entitled to dismissal of this action; <u>see</u> <u>Simonetti v. Niagara Fire Ins. Co.</u>, 74 F. Supp. 726, 728 (N.D.Ala. 1947) ("Since each complaint is now a suit directly upon the policy of insurance involved, and since plaintiffs have not complied with conditions precedent to their right to maintain suits upon said policies. . . each defendant would be entitled to a summary judgment, dismissing plaintiffs' suit against it. . . ."). <u>See</u> <u>also</u> <u>In re Intercontinental Sec. Corp.</u>, 62 B.R. 16, 17 (Bankr. N.D. Ill. 1986) (insured company CEO's refusal to complete his examination under oath could be imputed to the corporation, and the insured company's "failure to comply with the condition precedent for recovery under the policy bars [the insured's] action"); <u>Mortgagee Affiliates Corp. v. Commercial Union Ins. Co.</u>, 276 N.Y.S.2d 404, 407 (N.Y. App. Div. 1967) ("Our holding is that plaintiff is contractually bound by the disclosure provision in the policies and no suit or action is 'sustainable' unless there be compliance therewith."); <u>Catalogue Serv. of Westchester, Inc. v. Ins. Co. of N. Am.</u>, 425 N.Y.S.2d 635, 637 (N.Y. App. Div. 1980) ("The failure to comply with a policy provision requiring submission to an examination under oath, as often as may reasonably be required, is a material breach and will preclude an action to recover on the contract. . ."); <u>Firemen's Fund Ins. Co. v. Sims</u>, 42 S.E.

269, 271 (Ga. 1902) (No recovery could be had until the insured complied with the insurer's demand that he submit to an examination under oath, which was required as a condition precedent by the policy.).

The Policy at issue here expressly provides that the insurer is entitled to conduct an EUO "as often as may reasonably be required." (Supra, pp. 4-5) Despite Underwriters' willingness to attempt to resolve outstanding questions relating to the amount of Formosa's alleged claim through other avenues of inquiry, those avenues have been exhausted, and questions regarding the amount of loss remain. Some of those questions could have been resolved if Formosa had bothered to submit a compliant proof of loss. It did not do so, however, and Underwriters have had no opportunities to explore the elements of Formosa's claim outside of the litigation context. Accordingly, this action should be dismissed, and Formosa should submit promptly to an EUO in accordance with the Policy's terms.

**C.    The Commencement Of This Lawsuit, And Accompanying Discovery, Do Not Extinguish The Underwriters' Right To An EUO**

Despite Formosa's attempt to hide behind its premature suit, the filing of this suit does not preclude the EUO. Rather, in similar cases, courts repeatedly have held that an examination under oath must be conducted despite the fact that a lawsuit was commenced. For example, in Lentini Bros. Moving & Storage Co. v.

31

N.Y. Prop. Ins. Underwriting Ass'n, 422 N.E.2d 819 (N.Y. 1981), the insured

failed to submit to an examination under oath.  The court held:

> This is not a case in which the insured's attempt to
> comply has fallen short through some 'technical and
> unimportant omissions or defects' but it could be found
> to have substantially performed its obligation to co-
> operate.  Nor is it a situation in which the insurer, by
> repudiating liability for the loss, has excused the insured
> from performance of its obligations.  While the insurer
> may not after repudiating liability create grounds for its
> refusal to pay by demanding compliance with the
> examination and proof of loss provisions of the policy,
> neither can the insured insulate itself against co-operation
> by commencing an action before there has in fact been
> repudiation of liability by the insurer.

Id. at 836 (citations omitted); see also New Jersey Auto. Full Ins. Underwriting

Ass'n v. Jallah, 606 A.2d 839, 840 (N.J. Super. Ct. App. Div. 1992) (The court, in

considering the timeliness of an insured's arbitration demand, held that the

examination under oath transcends discovery.).

Even if Underwriters are permitted to conduct depositions in the course of

discovery in this action, Formosa's failure to submit to the EUO cannot be cured

by deposition.  "Appearance at a pre-trial deposition, after litigation, does not cure

the insured's contractual default in failing to appear for the examination under

oath." Lentini Bros. Moving & Storage Co. v. N.Y. Prop. Ins. Underwriting Ass'n,

428 N.Y.S.2d 684 (N.Y. App. Div. 1980).   Indeed, courts have consistently held

that the giving of recorded statements or the taking of depositions with both sides

present does not constitute substantial compliance with the examination under oath requirement for several specific reasons. First, the obligation to sit for an examination under oath is contractual and does not arise out of the rules of civil procedure. Second, an insured's counsel plays a different role and, unlike during depositions, may be excluded from the proceedings during examinations under oath. Third, examinations under oath are taken before litigation to augment the insurer's investigation of the claim, while a deposition is not part of the claim investigation process. Fourth, an insured has a duty to volunteer information related to the claim during an examination under oath in accordance with the policy, while he would have no such obligation in a deposition. See Thomson v. State Farm Ins. Co., 592 N.W.2d 82, 89 n.9 (Mich. Ct. App., 1998), quoting Goldman v. State Farm Fire Gen. Ins. Co., 660 So.2d 300, 305 (Fla. Dist. Ct. App., 1995); See also Dyno-Bite, Inc. v. The Travelers Cos., 439 N.Y.S.2d 558 (N.Y. App. Div. 1981) (In a first-party insurance situation the insured "controls his own fate," and therefore must live with the result of his failure to submit to an EUO.).

Public policy also dictates that depositions and belated offerings to appear for an examination under oath do not satisfy insurance policies' EUO requirements. See Johnson v. Allstate Ins. Co., 602 N.Y.S.2d 876 (N.Y. App. Div., 1993) (the insured's breach of the policy was not cured by his belated expression of a willingness to cooperate that was made more than two years after the loss and

only in response to the insurer's motion for summary judgment). Were it otherwise, the insured could refuse to comply with the policy conditions and then simply cure the default after litigation.

An insurer's right to an EUO can be waived only by the insurer's unequivocal -- not assumed or imagined -- denial of liability under the policy, and not, in Formosa's words, by failure to indemnify it for "the entirety" of its claimed loss, i.e., refusing to pay every dollar claimed whether or not supported or justified. See Am. Cent. Ins. Co. v. J. B. Henninger & Co., 87 Ill. App. 440, 441-442 (Ill. App. Ct. 1899) ("where an insurance company denies liability, it waives its examination under oath requirement); Horton v. Allstate Ins. Co., 467 N.E.2d 284, 286 (Ill. App. Ct. 1984) (An anticipatory breach requires a "positive and unequivocal manifestation of intention that the party will not render the promised performance when the time fixed in the contract arrives," and subjective belief that an insurer will not pay is insufficient to defeat an insurer's motion for summary judgment.) (citations omitted)

Underwriters have not denied liability. In fact, they have paid over $44 million. (Ex. 14) Underwriters are also prepared to pay more, but they cannot do so unless and until they have had the opportunity to assess Formosa's claim. To do so, Underwriters have the right to receive a compliant proof of loss. They then have the right to conduct an EUO, to clarify or amplify the contents of the Proof or to

develop any additional information that is beyond the scope of the Proof but may be necessary to enable them to arrive at a proper evaluation of the claim. Until these obligations are satisfied, Underwriters should not be forced to pay a claim that has not been properly made and substantiated.

## CONCLUSION

All through the investigation and adjustment process, Underwriters have bent over backwards to accommodate Formosa:

- Time and again they extended the deadline for the filing of the Proof;

- They extended the time for suit under the Policy;

- They accepted informal interviews of a limited number of witnesses in lieu of examination under oath on seven of the eleven items specified in their EUO demand;

- They made very substantial advance payments on the basis of information presented informally; and

- They agreed to a major relaxation of the Policy's two-year rebuild requirement, so that Formosa could obtain the benefit of higher "replacement cost value" adjustment, even though actual replacement was not completed (indeed, was not even begun) within two years.

Formosa's insurers have gone far more than halfway in their efforts to accommodate their insured. Formosa's response, it is now clear, deprives the

insurers of their contractual rights: to a sworn, detailed proof of loss and to an examination under oath.

The Court should not countenance Formosa's tactics.  Formosa's premature lawsuit should be dismissed outright or, at the very least, stayed so that Formosa be given an opportunity to correct these fatal defects.

Dated:     Newark, New Jersey
           January 5, 2007

                          MOUND COTTON WOLLAN &
                          GREENGRASS
                          Attorneys for Defendants Except
                          Lloyd's Syndicate 1200


                          By:_____s/Jeffrey S. Weinstein_____
                             Jeffrey S. Weinstein  (JW-2619)
                          60 Park Place
                          Newark, New Jersey 07102
                          (973) 494-0600


                          DUANE MORRIS LLP
                          Attorneys for Defendant Lloyd's
                          Syndicate 1200

                          By:_____
                             Gregory R. Haworth  (GH-9644)
                          744 Broad Street
                          Newark, New Jersey 07102-3889
                          (973) 424-2014

## CERTIFICATE OF SERVICE

I, JEFFREY S. WEINSTEIN, hereby certify that on this 5th day of January, 2007, I personally

caused a true and correct copy of the foregoing DEFENDANTS' MEMORANDUM OF LAW

IN SUPPORT OF THEIR MOTION TO DISMISS to be served by mail upon plaintiff's counsel

at the following address:

> Eugene Killian, Jr., Esq.
> KILLIAN & SALISBURY, P.C.
> 77 Brant Avenue, Suite 115
> Clark, New Jersey 07066

                    s/Jeffrey S. Weinstein
                    JEFFREY S. WEINSTEIN